# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

--------------------------------------------------------- x

JAMES DOLAN, individually and on behalf of all
others similarly situated,

                          Plaintiff,

               - against -

FORD MOTOR COMPANY,

                        Defendant.

--------------------------------------------------------- x

Case No. 3:23-cv-512

Judge Robert E. Payne

**Oral Argument Requested**

## FORD MOTOR COMPANY'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

Hector Torres*
Cindy Caranella Kelly*
Stephen P. Thomasch*
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
htorres@kasowitz.com
ckelly@kasowitz.com
sthomasch@kasowitz.com

Perry W. Miles IV (#43031)
Brian D Schmalzbach (#88544)
Jonathan T. Tan (#88037)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
pmiles@mcguirewoods.com
bschmalzbach@mcguirewoods.com
jtan@mcguirewoods.com

*pro hac vice forthcoming

Attorneys for Defendant Ford Motor
Company

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ............................................ 2

I.      The Filing Of The 10R80 Actions ........................................................................ 2

II.     The Transfer Of *Boggan*, *Skole*, and *Vangel* To The District Of Massachusetts For Consolidation With *McCabe* ...................................................................................... 4

III.    Plaintiff Dolan Files Copy-Cat Action ................................................................ 5

ARGUMENT ................................................................................................................. 7

I.      LEGAL STANDARD ......................................................................................... 7

II.     THIS ACTION IS SUBSTANTIVELY THE SAME AS THE MCCABE ACTION ...... 8

      A.    *McCabe* Is The "First-Filed" Action ..................................................... 8

      B.    The Parties Substantially Overlap Because *McCabe*'s Putative Nationwide Class Subsumes The Virginia Class And Subclass, And Ford Is The Sole Defendant In All Actions ..................................................................... 9

      C.    The Issues Substantially Overlap ........................................................ 11

III.    BALANCE OF CONVENIENCES TIPS IN FAVOR OF TRANSFER ...................... 13

      A.    Plaintiff's Choice Of Forum ............................................................... 14

      B.    Convenience Of The Parties And Witnesses ........................................ 16

            1.    Ease Of Access To Sources Of Proof ....................................... 16

            2.    The Cost of Obtaining The Attendance Of Witnesses ............................ 17

            3.    Compulsory Process And The Convenience Of Non-Party Witnesses ........................................................................... 17

      C.    Interest Of Justice ............................................................................ 18

IV.    NO SPECIAL CONSIDERATIONS WEIGH AGAINST APPLICATION OF THE RULE HERE ................................................................................................... 20

CONCLUSION .............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acterna, LLC v. Adtech, Inc.*,
  129 F. Supp. 2d 936 (E.D. Va. 2001) ........................................................................15

*Adams v. Amazon.com, Inc.*,
  2023 WL 4002534 (W.D. Va. June 14, 2023) ............................................................18

*Automated Tracking, Sols., LLC v. Validfill, LLC*,
  2015 WL 9025703 (E.D. Va. Dec. 15, 2015) ............................................................14

*Byerson v. Equifax Info. Servs., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. Dec. 20, 2006) ....................................................16, 18

*Farina v. Mazda Motor of Am., Inc.*,
  2023 WL 4241675 (W.D.N.C. June 28, 2023) ..................................................... *passim*

*Glob. Tel Link Corp. v. Securus Techs. Inc.*,
  2014 WL 860609 (E.D. Va. Mar. 5, 2014) .................................................................15

*Gonzalez v. Homefix Custom Remodeling, Corp.*,
  2023 WL 3115585 (E.D. Va. Apr. 26, 2023) ....................................................... *passim*

*Hart v. Navy Fed. Credit Union*,
  2022 WL 2914477 (D.S.C. July 25, 2022) .................................................................19

*Intellor Grp., Inc. v. Cicero*,
  2019 WL 1643549 (D. Md. Apr. 16, 2019) ...............................................................9, 18

*James v. LoanCare, LLC*,
  2016 WL 10893949 (E.D. Va. Feb. 22, 2016) .............................................................7

*Kendus v. USPack Servs., LLC*,
  2020 WL 1158570 (D. Md. Mar. 10, 2020) ................................................................10

*King v. Corelogic Credco, LLC*,
  2018 WL 2977393 (E.D. Va. June 13, 2018) ...............................................15, 16, 18, 20

*Moore's Elec. & Mech. Constr., Inc. v. SIS, LLC*,
  2015 WL 6159473 (W.D. Va. Oct. 20, 2015) ...............................................8, 9, 11, 13

*O'Connor v. Ford Motor Co.*,
  2023 WL 2185992 (N.D. Ill. Feb. 23, 2023) ...............................................................3

*Orndorff v. Ford Motor Company,*
    2020 WL 1550760 (E.D. Pa. Mar. 31, 2020)............................................................12, 13, 17

*Realson v. Univ. Med. Pharms. Corp.,*
    2010 WL 1838911 (D.S.C. May 6, 2010).............................................................................19

*Samsung Elecs. Co. v. Rambus, Inc.,*
    386 F. Supp. 2d 708 (E.D. Va. 2005) ...................................................................................18

*Teva Pharms. USA, Inc. v. Mylan Pharms., Inc.,*
    2017 WL 958324 (N.D.W. Va. Mar. 10, 2017).....................................................................15

*Troche v. Bimbo Food Bakers, Distrib., Inc.,*
    2011 WL 3565054 (W.D.N.C. Aug. 12, 2011)...............................................................10, 12

**Other Authorities**

N.D. Ill. Local Rule 40.4(b)....................................................................................................9

## PRELIMINARY STATEMENT[1]

This is one of five related actions currently pending in federal courts around the country that allege, on behalf of putative classes of consumers, that Ford designed, manufactured, marketed, and sold vehicles equipped with defective 10R80, 10-speed automatic transmissions, and subsequently breached its warranty obligations.  Before this action was filed, the following putative class actions had been filed:  (i) *McCabe v. Ford Motor Company*, No. 1:23-cv-10829 (D. Mass.) ("*McCabe*"); (ii) *Boggan v. Ford Motor Company*, No. 2:23-cv-00774 (N.D. Ala.) ("*Boggan*"); (iii) *Skole v. Ford Motor Company*, No. 1:23-cv-04130 (N.D. Ill.) ("*Skole*"); and (iv) *Vangel v. Ford Motor Company*, No. 1:23-cv-22572 (S.D. Fla.) ("*Vangel*," and collectively with *McCabe*, *Boggan*, and *Skole*, the "10R80 Actions").  Because of the overlap in the parties, subject matter, and class definitions in the 10R80 Actions, Ford moved, under the "first-to-file" rule, to transfer each of the *Boggan*, *Skole*, and *Vangel* actions to the District of Massachusetts for consolidation with *McCabe*, which was the first-filed action.  All of the transfer motions have been granted by the respective Courts, and the parties are in the process of seeking consolidation of the various actions before Chief Judge Saylor in the District of Massachusetts.  Transfer of this action to the District of Massachusetts is similarly warranted under the "first-to-file" rule.  The 10R80 Actions are in the pre-discovery and pre-responsive pleading stage.  Ford's motion to transfer the venue of this action to the District of Massachusetts should be granted for several reasons.

*First*, transfer is appropriate under the "first-to-file" rule because *McCabe* was filed approximately four months before this action (*Boggan*, *Skole*, and *Vangel* were likewise filed one-to-two months before this action), and there is substantial overlap in subject matter, issues, claims, parties, and classes between the actions.

---

[1]      True and correct copies of exhibits ("Ex.") in support of Ford's motion are attached hereto.

*Second*, the balance of the Fourth Circuit's "convenience factors" weighs in favor of transferring this action to the District of Massachusetts for consolidation with *McCabe* (and the other 10R80 Actions, by extension) and into a single proceeding.

*Third*, transfer promotes sound judicial administration and comity among federal courts because Plaintiff is already a member of the putative nationwide class in the *McCabe* action (and other 10R80 Actions), and no special considerations warrant not applying the "first-to-file" rule.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### I.   The Filing Of The 10R80 Actions

Between 2019 and 2021, a group of plaintiffs, seeking to represent nationwide and statewide classes of consumers who purchased or leased Model Year 2017-2020 Ford F-150 pickup trucks equipped with allegedly defective 10R80, 10-speed automatic transmissions, initiated five putative class actions in federal courts across the country.  All of those actions were ultimately transferred to the Northern District of Illinois and consolidated with *O'Connor v. Ford Motor Company*, No. 1:19-cv-05045 (N.D. Ill.) ("*O'Connor*").[2] (*O'Connor* ECF No. 63, ¶¶ 1, 3.) The District Court in *O'Connor* held that the putative class vehicles in that action are limited to Model Year 2017-2020 Ford F-150 pickup trucks, and denied a motion to expand the class vehicles to include four other Ford vehicles—Ford Expeditions, F-150s, Mustangs, Rangers, and Lincoln Navigators equipped with the 10R80 transmission, which are the vehicles at issue in *this* action. *See O'Connor v. Ford Motor Co.*, 2023 WL 2185992, at *4 (N.D. Ill. Feb. 23, 2023).

---

[2]      Before consolidation, the *O'Connor* action originally consisted of the following five separate class actions: (i) *O'Connor v. Ford Motor Co.*, No. 1:19-cv-05045 (N.D. Ill.); (ii) *Marino v. Ford Motor Co.*, No. 1:20-cv-10048 (D. Mass.); (iii) *Smith v. Ford Motor Co.*, No. 5:20-cv-00211 (N.D. Cal.); (iv) *Orndorff v. Ford Motor Co.*, No. 2:20-cv-00247 (E.D. Pa.); and (v) *Dastolfo v. Ford Motor Co.*, No. 1:21-cv-20051 (D.N.J.).

In response to that denial, plaintiffs across the country filed the four factually and legally similar 10R80 Actions, and served Ford with pre-suit demand letters threatening the filing of a fifth in the Central District of California.  The first-filed action, *McCabe*, was filed in the District of Massachusetts on April 18, 2023 (Ex. 1), followed by *Boggan*, filed in the Northern District of Alabama on June 13, 2023 (Ex. 2), *Skole*, filed in the Northern District of Illinois on June 27, 2023 (Ex. 3), and, *Vangel*, filed in the Southern District of Florida on July 11, 2023 (Ex. 4).  Each of the 10R80 Actions is currently at the pre-discovery and pre-responsive pleading stage.

Each of the 10R80 Actions includes identical substantive allegations.  Specifically, the plaintiffs in *each* of the 10R80 Actions allege that, since at least 2017, Ford designed, manufactured, marketed, and sold Ford Expeditions, Mustangs, Rangers, F-150s, and Lincoln Navigator vehicles that were equipped with defective 10R80, 10-speed automatic transmissions, and subsequently breached its warranty obligations.  (Exs. 2-3, 5-6.)  Further, *all* claim that Ford knew or should have known of the alleged defect, and did not disclose it to the named plaintiffs when they purchased or leased their vehicles.  (Ex. 2, ¶¶ 4, 10; Ex. 3, ¶¶ 4, 10; Ex. 5, ¶¶ 4, 10; Ex. 6, ¶¶ 4, 10.)  *None* alleges any physical injury as a result of the purported defect, and, instead, seek economic damages.  (Exs. 2-3, 5-6.)  Further, each complaint asserts virtually identical claims against Ford—breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, violation of the Magnuson-Moss Warranty Act, negligence, fraud/fraudulent concealment, unjust enrichment, and violation of their respective states' consumer protection laws.[3]  (Exs. 2-3, 5-6.)

---

[3]     Specifically, in *McCabe* the plaintiffs assert a claim for violation of the Massachusetts Consumer Protection Law (Ex. 5, ¶¶ 213-231), in *Boggan*, the plaintiffs assert a claim for violation of the Alabama Deceptive Trade Practices Act (Ex. 2, ¶¶ 211-227), in *Skole*, the plaintiffs assert a claim for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Ex. 3, ¶¶

The plaintiffs in each of the 10R80 Actions seek to represent a nationwide class: "All persons in the United States and its territories who formerly or currently own or leased one or more vehicles with a 10R80 10-speed automatic transmission."  (Ex. 2, ¶ 122; Ex. 3, ¶ 138; Ex. 5, ¶ 115; Ex. 6, ¶ 112 (footnote omitted, in each).)  The individual plaintiffs in each action also seek to represent statewide subclasses for their respective states: "All persons in [State] who formerly or currently own or leased one or more vehicles with a 10R80 10-speed automatic transmission." (Ex. 2, ¶ 123; Ex. 3, ¶ 139; Ex. 5, ¶ 116; Ex. 6, ¶ 113.)[4]

## II.     The Transfer Of *Boggan*, *Skole*, and *Vangel* To The District Of Massachusetts For Consolidation With *McCabe*

Given the substantial overlap in parties, issues, and claims, Ford filed motions to transfer each of the *Boggan*, *Skole*, and *Vangel* actions to the District of Massachusetts pursuant to the "first-filed" rule and/or 28 U.S.C. § 1404(a), for consolidation with the *McCabe* action.  (*Boggan* ECF No. 15; *Skole* ECF No. 8; *Vangel* ECF No. 9.)

Each court granted Ford's motion and transferred their respective actions to the District of Massachusetts.  *First*, on August 18, 2023, Judge Sharon J. Coleman of the Northern District of Illinois entered a minute entry in *Skole* granting Ford's motion and directing the "transfer [of] this matter to the District of Massachusetts forthwith."  (Ex. 7.)  *Second*, on August 23, 2023, Chief Judge Cecilia M. Altonaga of the Southern District of Florida entered an order in *Vangel* finding that "this case satisfies the standard for transfer under the 'first-filed' rule as well as section 1404(a)[ ]" and ordering the transfer of the action to the District of Massachusetts.  (Ex. 8, at 1-2.)

---

236-254), and in *Vangel*, the plaintiffs assert a claim for violation of the Florida Deceptive and Unfair Trade Practices Act (Ex. 6, ¶¶ 214-233).

[4]     The complaints in each 10R80 Action also all indicate plaintiffs' intent to carve-out from the above-quoted class definitions any classes certified in *O'Connor*.  (Ex. 2, ¶ 124; Ex. 3, ¶ 140; Ex. 5, ¶ 117; Ex. 6, ¶ 114.)

*Third*, on August 25, 2023, Judge Madeline Hughes Haikala of the Northern District of Alabama entered an order in *Boggan* granting the "transfer [of] this action to the District of Massachusetts," and recognizing that the "[*Boggan*] plaintiffs are members of a putative class in [*McCabe*]." (Ex. 9, at 2.)

On August 25, 2023, and September 11, 2023, respectively, the Clerks for the Southern District of Florida and Northern District of Alabama formally transferred *Vangel* and *Boggan* to the District of Massachusetts.  Upon transfer, both actions were designated as related to *McCabe* and assigned to its presiding judge—Chief Judge F. Dennis Saylor, IV.[5]  (Ex. 10.)  By agreement between the parties to the 10R80 Actions, the parties intend to move to consolidate the transferred actions with *McCabe* following the formal transfer of the *Skole* action.

## III.   Plaintiff Dolan Files Copy-Cat Action

On August 11, 2023, Plaintiff Dolan, the owner of a 2018 Ford F-150, commenced this action through his filing of the Class Action Complaint (the "Complaint").  (ECF No. 1, ¶ 44.) The allegations in the Complaint, save for a few paragraphs related to Plaintiff's individual experience, appear to be copied verbatim from the First Amended Complaint in *McCabe*, which was filed on June 23, 2023 (Ex. 5).  A blackline comparison of the two pleadings is attached here as Exhibit 11.  Thus, as in *McCabe* (and the other 10R80 Actions), Plaintiff alleges that (i) "[Ford] designed, manufactured, distributed, advertised, marketed, sold, and/or leased Ford Expeditions, Mustangs, Rangers, F-150s, and Lincoln Navigators equipped with the 10R80 [10-speed transmission] from at least 2017 to present" (Compl. ¶ 3); (ii) the putative class vehicles contain "one or more design and/or manufacturing defects" that purportedly cause the putative class

---

[5]     Upon transfer, each action received new case numbers in the District of Massachusetts— *Vangel v. Ford Motor Company*, No. 1:23-cv-11964-FDS and *Boggan v. Ford Motor Company*, No. 1:23-cv-12087-FDS.  (Ex. 10.)

vehicles to hesitate, lunge, clunk, surge, slip, or jerk between gears (*id*. ¶ 4); (iii) Ford did not disclose the purported defect at time of sale or lease (*id*. ¶ 10); and (iv) Ford refuses to replace or recall the purportedly defective 10R80 transmission (*id*. ¶ 6).  Plaintiffs in the 10R80 Actions each make the same substantive allegations.  (*See* ¶¶ 3, 4, 6, 10 of Exs. 2, 3, 5, 6.)  And, like the named plaintiffs in the 10R80 Actions (*see* ¶¶ 11-12 of Exs. 2, 3, 5, 6), Plaintiff also contends that, as a result of Ford's purported "omissions and/or misrepresentations," he "suffered ascertainable loss of money, property, and/or loss in [the] value of [his] [2018 Ford F-150]" (Compl. ¶ 12, 44), which he, purportedly, would not have bought or would have paid less for had he known of the purported defect (*id*. ¶ 11).

Based on those allegations, Plaintiff asserts the same claims that the named plaintiffs in the 10R80 Actions raise.  Specifically, Plaintiff alleges claims for breach of express warranty (Count 1), breach of implied warranty of merchantability (Count 2), breach of implied warranty of fitness for a particular purpose (Count 3), violation of the Magnuson-Moss Warranty Act (Count 4), negligence (Count 5), fraud/fraudulent concealment (Count 6), and unjust enrichment (Count 7). (*See* Compl., ¶¶ 113-203.)  Further, just like the plaintiffs in the 10R80 Action who assert claims under their state's consumer protection statutes (*e.g.*, plaintiff McCabe's assertion of a claim under Section 93A of the Massachusetts Consumer Protection Law), Plaintiff here asserts a claim under the Virginia Consumer Protection Act ("VCPA") (Count 8) (*id*. ¶¶ 204-227).

Plaintiff seeks to represent two putative classes of consumers, defined as follows: (1) "[a]ll persons residing in Virginia who formerly or currently own(ed) or leased one or more vehicles with a 10R80 10-speed automatic transmission[,]" (the "Class") (Compl. ¶ 105 (footnote omitted)) and (2) "[a]ll persons in Virginia who formerly or currently own(ed) or leased one or more vehicles with a 10R80 10-speed automatic transmission who received personal property tax relief under

Virginia law for their vehicle(s) with a 10R80 10-speed transmission[ ]" (the "Subclass").[6]  (*Id.* ¶ 106 (footnote omitted).)  All members of those putative classes would be subsumed within the nationwide classes proposed in *McCabe* (and the other 10R80 Actions).

On September 8, 2023, Plaintiff effected service on Ford, which created a September 29th deadline for Ford to respond to the Complaint.  On September 14th, counsel for Ford informed Plaintiff's counsel of its intent to file a motion to transfer this action to the District of Massachusetts for consolidation with the *McCabe* action and a motion to stay proceedings in this action pending resolution of the transfer motion.  On September 15th, Plaintiff's counsel informed Ford that he intends to oppose both motions.

## ARGUMENT

## I.  LEGAL STANDARD

In the Fourth Circuit, "the First-to-File Rule is a principle of 'sound judicial administration' that favors allowing an earlier-filed action to proceed to the exclusion of a later filed action addressing substantially the same issues." *Gonzalez v. Homefix Custom Remodeling, Corp.*, 2023 WL 3115585, at *3 (E.D. Va. Apr. 26, 2023) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)).  "This 'first-to-file' or 'first-filed' rule is a principle of judicial comity.  The policy behind the rule is the avoidance of duplicative litigation and the conservation of judicial resources." *James v. LoanCare, LLC*, 2016 WL 10893949, at *1 (E.D. Va. Feb. 22, 2016) (cleaned up).  In analyzing the applicability of the first-to-file rule, courts in this Circuit consider three factors: (1) "whether the actions are substantively the same or

---

[6]      Plaintiff Dolan, just like the individual plaintiffs in the 10R80 Actions, indicates an intent to carve out from the proposed class definitions any classes certified in *O'Connor*.  (Compl. ¶ 107.) To the extent that the putative nationwide class of consumers is certified in *O'Connor*, Plaintiff would be a member of that class, but Plaintiff has not indicated whether he would opt-out of the class.

sufficiently similar," (2) whether "special circumstances that warrant an exception to the rule exist," and (3) "whether the balance of convenience weighs in favor of allowing the second-filed action to proceed." *Moore's Elec. & Mech. Constr., Inc. v. SIS, LLC*, 2015 WL 6159473, at *3-4 (W.D. Va. Oct. 20, 2015).  Where the rule applies, "a district court may dismiss, stay, or transfer a suit when a similar lawsuit has been filed and is pending in a federal forum." *Farina v. Mazda Motor of Am., Inc.*, 2023 WL 4241675, at *4 (W.D.N.C. June 28, 2023).

## II.   THIS ACTION IS SUBSTANTIVELY THE SAME AS THE *MCCABE* ACTION

To determine whether this action and the *McCabe* action are sufficiently similar under the "first-to-file" rule, this Court must consider "(1) the chronology of the filings; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Moore's*, 2015 WL 6159473, at *3.  "The actions being assessed need not be identical if there is substantial overlap with respect to the issues and parties." *Id.* (quotation marks omitted).  Here, because the *McCabe* action is indisputably the "first-filed" and the issues, parties, claims, and classes it raises are either identical or stem from the same set of operative facts as this action, the "first-to-file" rule applies and weighs in favor of granting Ford's motion.

### A.   *McCabe* Is The "First-Filed" Action

Here, *McCabe* is indisputably the "first-filed" action, as it was commenced on April 18, 2023, (Ex. 1), almost four-months *before* Plaintiff Dolan initiated this action on August 11, 2023 (*see generally* Compl.).[7]  Courts routinely recognize that gaps in filing dates, like the one present here, weigh in favor of applying the "first-to-file" rule.  *See, e.g.*, *Gonzalez*, 2023 WL 3115585, at *4 (chronology-factor favors transfer where first-filed action preceded later-filed actions by

---

[7]    Indeed, this action is actually the *fifth-filed* action after *McCabe*, with *Boggan* (filed June 13, 2023), *Skole* (filed June 27, 2023), and *Vangel* (filed July 11, 2023), all being filed earlier. (Exs. 1-4.)

approximately two and nine months); *Intellor Grp., Inc. v. Cicero*, 2019 WL 1643549, at *4 (D. Md. Apr. 16, 2019) (chronology weighs in favor of transfer where first-filed action preceded later-filed action by six weeks).  Thus, the first factor clearly weighs in favor of transfer under the "first-to-file" rule.[8]

### B.    The Parties Substantially Overlap Because *McCabe*'s Putative Nationwide Class Subsumes The Virginia Class And Subclass, And Ford Is The Sole Defendant In All Actions

The second factor—similarity of the parties—also supports transfer under the "first-filed" rule.  "In analyzing this factor, complete identity between the parties in the lawsuits is not required; instead, 'substantial overlap' of the parties is sufficient for application of the First-to-File Rule." *Gonzalez*, 2023 WL 3115585, at *4 (citing *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. Dec. 20, 2006)); *see also Moore's*, 2015 WL 6159473, at *4 ("[C]ourts have long held that neither the parties involved nor the issues at stake need be completely identical for the first-to-file rule to apply.").  "Where the two compared actions are proposed class actions, courts in applying the First-to-File Rule have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified." *Gonzalez*, 2023 WL 3115585, at *4 (quotation marks omitted); *see also Farina*, 2023 WL 4241675, at *5 ("[I]n a class action, 'the classes, and not the class representatives, are compared.'").  Here, there is "substantial overlap" between the parties because Ford is the sole defendant in each action, and the putative

---

[8]      *O'Connor*, while filed prior to *McCabe*, is not the "first-filed" action because of the different scope of the putative classes in each action, *i.e.*, *O'Connor* concerns only 2017-2020 Ford F-150 pickup trucks equipped with the 10R80 transmission, while this action concerns all Ford vehicles equipped with the 10R80 transmission. (*Supra* p. 5.)  Furthermore, consolidation with *O'Connor* is not possible at this juncture under applicable local rules because *O'Connor* has "progressed to the point where designating a later-filed case as related would be likely to delay the proceedings in the earlier case substantially" and because the cases would not be "susceptible of disposition in a single proceeding."  N.D. Ill. Local Rule 40.4(b).

Class and Subclass are subsumed within the putative nationwide class alleged in *McCabe* (and the other 10R80 Actions).

Here, Ford is the sole defendant in each action. Further, Plaintiff and the putative Class and Subclass Plaintiff seeks to represent are a part of the putative nationwide class alleged in *McCabe* (and the other 10R80 Actions). Specifically, the putative nationwide class in *McCabe* covers "[a]ll persons in the United States and its territories who formerly or currently own or leased one or more vehicles with a 10R80 10-speed automatic transmission" (Ex. 5, ¶ 115 (footnote omitted)), whereas the Class covers the same persons within Virginia (Compl. ¶ 105), and the Subclass covers individuals in Virginia receiving certain tax relief, in connection with the same putative class vehicles (*id.* ¶ 106). Where, as here, the putative classes in the second-filed action are overlapping with, or entirely subsumed by, the putative classes in the first-filed action, courts in this Circuit routinely find substantial similarity in parties. *See, e.g.*, *Farina*, 2023 WL 4241675, at *5 (factor satisfied where "plaintiff seeks to represent a class of individuals that is entirely subsumed by the plaintiff class in the [first-filed] matter against the same manufacturer defendant"); *Kendus v. USPack Servs., LLC*, 2020 WL 1158570, at *2 (D. Md. Mar. 10, 2020) (factor supported application of first-filed rule where "every party in this case is either a party in the [first-filed] litigation, or included in that case's proposed class definition"); *Troche v. Bimbo Food Bakers, Distrib., Inc.*, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011) (first-filed rule applied where there were overlapping putative classes).

The holding in *Gonzalez v. Homefix Custom Remodeling Corp.*, 2023 WL 3115585 (E.D. Va. Apr. 26, 2023), is illustrative. There, plaintiff alleged that defendant violated certain federal and state telephone consumer protection laws, and sought to represent three putative classes of allegedly impacted consumers. 2023 WL 3115585, at *1-2. Plaintiff Gonzalez's suit, however,

was the third-pending putative class action, with the first two having been brought against "the same, single defendant" and seeking to represent a nationwide class of consumers that "encompassed," either wholly or in large part, all three of the classes that Gonzalez sought to represent. *Id.* at *4. The Court found "immaterial" plaintiff's attempt to distinguish her state-specific class by limiting it "to Virginia residents or areas codes . . . because all of the Virginia class members would be encompassed by the other nationwide [ ] classes [that] include all persons in the United States." *Id.* at * 5. In rejecting that purported distinction, the Court properly reasoned that "[i]f the rule could be circumvented by pointing to a minor difference in class definitions, duplicative class actions would be allowed to proceed unabated and class members could be subject to inconsistent rulings." *Id.* (quotation marks omitted). Thus, it found that this factor was satisfied despite the differences in scope of the putative classes. The same reasoning applies here. (*See also* Ex. 9, at 2 (recognizing that plaintiffs in the related 10R80 action are "members of a putative class [in the *McCabe* action]").)

### C.     The Issues Substantially Overlap

The last factor also supports transferring this action to the District of Massachusetts. As with the identity of the parties, "the issues at stake" do not need to be "completely identical" for the "first-to-file" rule to apply. *Moore's,* 2015 WL 6159473, at *4; *see also Farina,* 2023 WL 4241675, at *5 ("This factor, like the analysis of the parties, does not require total identicality; rather, 'substantial similarity' is enough"). Here, the *McCabe* action presents issues similar, if not virtually identical, to those alleged in this action. In fact, even a superficial comparison of the pleadings in each action demonstrates that the Complaint here was copied almost verbatim from the *McCabe* First Amended Complaint (Ex. 11).

Indeed, in both actions, the plaintiffs allege that Ford improperly designed, manufactured, marketed, and sold vehicles with purportedly defective 10R80, 10-speed automatic transmissions,

and subsequently failed to meet its warranty obligations.  Based on those allegations, plaintiffs allege virtually identical causes of action.  (*Supra* pp. 3, 6.)  In fact, seven of Plaintiff's eight claims mirror those asserted in *McCabe*, and the eighth claim is a state-specific consumer protection claim that arises from the same operative facts.[9]  In similar circumstances, the *Vangel*, *Boggan*, and *Skole* Courts each granted Ford's request to transfer, despite each case involving claims asserted under a different state-consumer protection law.  (Ex. 8 ("This case satisfies the standard for transfer under the 'first-filed' rule"); Ex. 9, at 1-2; Ex. 7.)  Similarly, courts in this Circuit routinely find "substantial overlap" even with the assertion of a separate, but related claim.  *See, e.g.*, *Gonzalez*, 2023 WL 3115585, at *6 (applying the first-to-file rule, even though later-filed action include an additional, but related claim, and collecting cases in support of rationale); *Farina*, 2023 WL 4241675, at *5-6 (finding issues "substantially overlap" where claims in a later-filed action, including the additional claims, arise from the same alleged defect, alleged failure to repair, and alleged concealment); *see also* *Troche*, 2011 WL 3565054, at *3 ("the presence of additional but related state law claims does not mean that the cases are so dissimilar as to avoid the application of the first-filed rule.")

The decision in *Orndorff v. Ford Motor Company*, 2020 WL 1550760 (E.D. Pa. Mar. 31, 2020)—one of the pre-consolidation *O'Connor* actions that was transferred under the "first-filed" rule—is instructive.  The *Orndorff* court found that the plaintiff's "claims are substantially similar to the claims in the related actions" despite "invoking different states' laws[.]"  2020 WL 1550760, at *3.  Further, the Court recognized that "in each of the four actions, the plaintiffs seek to represent

---

[9]     To be clear, the inclusion of the state-specific consumer-protection laws in each of the 10R80 Actions did not defeat Ford's request to transfer the *Vangel*, *Boggan*, and *Skole* actions to the District of Massachusetts (*supra* pp. 3, 4-5; *see also* Exs. 7-9), and should not here.  Plaintiff's claim-for-relief under the Virginia Consumer Protection Act, in fact, further demonstrates the "substantial overlap" between this action and the *McCabe* action.

state classes of consumers alleging that Ford improperly manufactured, marketed, and sold Ford

Model Year 2017-2020 F-150 vehicles with purportedly defective 10R80 transmissions, and each

lawsuit involves similar claims, such as breach of express warranty, violation of the Magnuson-

Moss Warranty Act, and breach of applicable state consumer protection statutes" and that "[a]ll of

the claims arise from the same conduct and would involve the same witnesses and evidence." *Id.*

The same is true here because of the substantial overlap between the issues in this action and the

*McCabe* action.

*       *       *

In sum, this action and the *McCabe* action are subject to the "first-to-file" rule and *McCabe*,

which "substantially overlaps" with the parties and issues raised by Plaintiff here, is indisputably

the first-filed action.  Transfer to the District of Massachusetts is thus proper under the "first-to-

file" rule.  Further, because *McCabe* and this action "[both] promise to involve duplicative and

complex discovery, motions, and trial proceedings," denial of transfer "would be the epitome of

judicial waste and would be contrary to the policies underlying the first-filed rule." *See Farina*,

2023 WL 4241675, at *6 (cleaned up).

## III.   BALANCE OF CONVENIENCES TIPS IN FAVOR OF TRANSFER

The balance of conveniences also supports transfer of this action to the District of

Massachusetts for consolidation with *McCabe*.  Absent transfer, identical actions over an identical

alleged defect will need to be litigated twice, leading to a litany of inconveniences for the courts,

the parties, witnesses, and all others involved.  Courts in this Circuit determine the "balance of

convenience" by considering the same principles that govern review of requests to transfer under

28 U.S.C. § 1404(a)—namely, plaintiff's choice of forum, party convenience, witness convenience

and access to evidence, and the interest of justice.  *See Farina*, 2023 WL 4241675, at *6; *Moore's*,

2015 WL 6159473, at *4, 6.

13

Here, on balance, the witness and party convenience factors favor granting Ford's motion, and less deference is accorded to plaintiff's choice-of-forum because the nucleus of the alleged operative facts primarily occurred outside of Virginia.  Moreover, the "interest of justice" factor clearly favors transfer, and is sufficient, on its own, to justify such a result.  *See Gonzalez*, 2023 WL 3115585, at *6 (recognizing that "the interest of justice may be decisive in ruling on a transfer motion, even if the other factors point in a different direction" (cleaned up)).

A.     **Plaintiff's Choice Of Forum**

While a plaintiff's choice of forum ordinarily weighs against transfer, "any deference given to [that] choice is proportionate to the relation between the forum and the cause of action."  *Farina*, 2023 WL 4241675, at *7 (cleaned up); *see also Automated Tracking, Sols., LLC v. Validfill, LLC*, 2015 WL 9025703, at *2 (E.D. Va. Dec. 15, 2015) ("Even when a plaintiff sues in its home forum, that fact alone is not controlling and the weight of that factor depends on the nexus between the case and forum.").  Plaintiff's choice of forum is entitled to less deference here because the claims and underlying nucleus of operative facts at issue in the putative class action primarily arose outside of Virginia.

Here, Plaintiff alleges that he purchased a 2018 Ford F-150 pickup truck equipped with a 10R80, 10-speed automatic transmission that was "designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Ford Motor Company" (Compl. ¶ 17), and contained an undisclosed defect causing harsh shifting (*id.* ¶ 4) that Ford knew or should have known of at the time of the sale (*id.* ¶¶ 10, 45).  Thus, the gravamen of the Complaint, which informs *each claim raised*, is his allegation that Ford knew (or should have known) that a purported defect in the 10R80 transmission that *Ford* designed, manufactured, marketed, and sold, causes the putative class vehicles to behave erratically.  (*Id.* ¶¶ 4, 10, 45.)  Ford, as Plaintiff admits, is not based in Virginia, but in Dearborn, Michigan (*id.* ¶ 18), and Plaintiff does not allege any direct connection

14

between Ford or the development of the 10R80 and Virginia.  Thus, Plaintiff has alleged no facts concerning any connection between any of the purported wrongful conduct and this forum.

In contrast, the sole allegations tying this action to Virginia are Plaintiff's citizenship and allegations that he purchased, used, and that sought repairs for his vehicle from Ford dealerships in Virginia.  (Compl. ¶¶ 22, 47-49.)  Connections based on "sales activity[,] without more," however, do not afford Plaintiff deferential treatment under this factor.  *See Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) ("Federal courts are not solicitous of plaintiffs claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more.")

In fact, courts in this Circuit routinely find that the more attenuated the connection is between the operative facts and Plaintiff's chosen forum, less deference should be afforded to that choice.  *See, e.g., Glob. Tel Link Corp. v. Securus Techs. Inc.*, 2014 WL 860609, at *5 (E.D. Va. Mar. 5, 2014) (plaintiff's choice-of-forum afforded "less deference than usual[ ]" where contacts to the transferor-forum limited to plaintiff's citizenship and sales activities that did not appear to be any greater in the transferor forum, than elsewhere); *King v. Corelogic Credco, LLC*, 2018 WL 2977393, at *4 (E.D. Va. June 13, 2018) (affording less weight to plaintiff's choice-of-forum because "gravamen of the Complaint stems from [defendant's] procedures"); *see also cf. Teva Pharms. USA, Inc. v. Mylan Pharms., Inc.*, 2017 WL 958324, at *6, at *16 (N.D.W. Va. Mar. 10, 2017) ("nucleus of operative facts" is location of manufacturing, R&D, and marketing activities relevant to the alleged patent-infringement claim).

Thus, while Plaintiff's choice of forum weighs slightly against transfer, it should be afforded little deference because of the lack of a direct nexus between the facts underlying his claims and the forum.

**B.      Convenience Of The Parties And Witnesses**

In assessing the parties' convenience, courts in this Circuit consider (i) "the ease of access to sources of proof," (ii) "the cost of obtaining the attendance of witnesses," and (iii) "the availability of compulsory process." *Byerson*, 467 F. Supp. 2d at 633.  Here, the parties' and the witnesses' conveniences are best served by a transfer because it would avoid requiring their involvement in duplicative litigations.  This factor favors Ford's position.

**1.      Ease Of Access To Sources Of Proof**

Although modern technology has diminished the importance of *where* relevant documents and information are physically stored, consideration of this factor "remains essential to the analysis." *King*, 2018 WL 2977393, at *6.  Here, the vast majority of documents relevant to this action are maintained by Ford, *e.g.*, documents related to the design, development, and marketing of the 10R80 and the vehicles equipped with that transmission.  The production of documents by Ford in this action will thus be almost entirely overlapping with its anticipated document production in the *McCabe* action.  Plaintiff's production, by contrast, is expected to be *de minimis*, and consists of documents such as repair invoices and communications with Ford dealerships.  *See Farina*, 2023 WL 4241675, at *7 (recognizing that relevant records, in a putative class action alleging a defect in a vehicle, "would overwhelmingly" be located with the defendant, and that the individual plaintiff's records "would be minimal").

Accordingly, even if the productions are electronically stored and readily accessible from any location, this factor weighs in favor of transfer because it will avoid duplicative productions, conserve resources by shortening production lead-times, and allow for better information safeguards by reducing the number of host locations and need for repeated email transmissions.

**2.      The Cost of Obtaining The Attendance Of Witnesses**

Here, the cost of obtaining the attendance of party witnesses favors transfer to the District

of Massachusetts for consolidation with *McCabe*.  The vast majority of party witnesses in this action will be Ford employees who were involved in the facts underlying the claims, *e.g.*, the development, manufacture, and marketing of the 10R80 transmission.  Those witnesses will almost certainly be the same witnesses who will be called to testify in the consolidated *McCabe* action.  To deny transfer would require each of those witnesses to engage in duplicative testimony, which would raise the cost of obtaining attendance of key witnesses.  *See Farina*, 2023 WL 4241675, at *7 (factor favors transfer where party witnesses otherwise would need to travel "well across the country—only to provide duplicative testimony on the same issues").  By contrast, there is only one plaintiff in this action, who is not expected to be similarly burdened by testifying in the *McCabe* action.  As such, Plaintiff is not expected to be exposed to the same scheduling or costs issues.

Accordingly, because litigating all claims in one forum and on one timeline will substantially reduce unnecessary, burdensome, and/or repetitive travel and will streamline discovery and production protocols as to avoid the need for duplicative testimony, this factor supports granting Ford's motion.[10]  *See Farina*, 2023 WL 4241675, at *13; *Orndorff*, 2020 WL 1550760, at *2 (holding that this factor favored transfer where the transferee forum was "closer to the Defendant's principal place of business" and post-transfer consolidation would "reduce[] the burden on [Ford's] witnesses who would otherwise have to give duplicative testimony").

### 3.    Compulsory Process And The Convenience Of Non-Party Witnesses

Because the parties have not yet identified, and Ford is not aware of, any non-party

---

[10] Through this motion Ford is not conceding that the plaintiffs in the 10R80 Actions and Plaintiff here have experienced identical defects in their vehicles that would be susceptible to disposition in a single class-wide proceeding.  Instead, Ford is recognizing that each plaintiff includes identical allegations concerning the purported defects in their pleadings, which render a consolidated action more efficient than separate putative class actions.

witnesses who are unable to testify in either forum, it is premature to determine whether transfer will be more or less convenient for those witnesses. Assuming, *arguendo*, that any unwilling third-party witnesses exists, their testimony, presumably, would be required across *all* 10R80 Actions. Thus, to compel attendance, the parties would need to engage in unnecessarily repetitive motion practice that can be avoided by transferring this action to the District of Massachusetts and consolidating with *McCabe*. Further, to the extent that willing third-party witnesses will be called on to testify, they will also likely be required to testify in all 10R80 Actions. Thus, transfer and consolidation with *McCabe* would reduce their burden, by allowing them to avoid duplicative testimony.

### C.    Interest Of Justice

The interest of justice weighs heavily in favor of transfer. The interest of justice prong "relates to the efficient administration of the court system," *Intellor Grp.*, 2019 WL 1643549, at *6, and "encompasses public interest factors aimed at systemic integrity and fairness," *Byerson, 467 F. Supp. 2d at 635*. "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* In fact, "[o]ne of the most commonly cited aspects of the interest of justice factor is the goal of avoiding multiplicity of litigation from a single transaction[,]" which, in turn, requires courts consider, in their analyses, whether transfer will help avoid inconsistent judgments and promote judicial economy. *See Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (cleaned up); *see also King,* 2018 WL 2977393, at *7 (courts "favor transfer" where a related action exists in a different district, and so doing "avoid[s] inconsistent judgments and the unnecessary exploitation of judicial resources).

Courts in this Circuit routinely find that the interest of justice factor supports transfers to the forum where a related action is already pending. *See, e.g., Adams v. Amazon.com, Inc.*, 2023 WL 4002534, at *1 (W.D. Va. June 14, 2023) (ordering transfer to forum where "three similar and

related cases[,]" assigned to the same district judge, were already pending, because doing so would avoid inconsistent judgments and be in the interest of justice); *Gonzalez*, 2023 WL 3115585, at *7 (transferring a putative class action that involved "the same alleged conduct by [d]efendant, and nearly all of the same class members" to forum where two related, and earlier filed, actions were pending, in order to "promote judicial economy and consistent results"); *Hart v. Navy Fed. Credit Union*, 2022 WL 2914477, at *2 (D.S.C. July 25, 2022) ("Transfer would promote efficiency because the pending Virginia action involves substantially similar claims to the case here and the nationwide class in the Virginia action will subsume the putative South Carolina class here."); *Realson v. Univ. Med. Pharms. Corp.*, 2010 WL 1838911, at *6 (D.S.C. May 6, 2010) (interest of justice weighs in favor of transfer and "would promote judicial economy and consistency of results[,]" because the purported class members and alleged wrongful conduct overlap).

As shown above (*supra* pp. 9-13), this action is indisputably related to the *McCabe* action (and the other 10R80 actions). There is "substantial overlap" in the parties and issues raised by this action and the *McCabe* actions, and the putative nationwide class in *McCabe* subsumes the Class and Subclass proposed in this action. Transfer to the District of Massachusetts, for consolidation with the *McCabe* action, will expedite and reduce litigation costs, streamline motion practice and any discovery challenges, and avoid the need for duplicative testimony. For example, transfer and consolidation would avoid each court having to adjudicate the same discovery, resolve dispositive motions over the same alleged defect, and, if necessary, preside over trials involving the same claims, issues, and evidence. Transfer also will prevent judicial waste and promote consistent results, particularly because the named plaintiffs in *McCabe* seek to represent a nationwide class of consumers that includes Plaintiff. To the extent that the actions proceed independently and result in consistent results, the overlapping nature of the putative classes in this

action and *McCabe* could create a logistical nightmare where putative class members are forced to choose between which class to participate in, and potentially try to jump from one to another if one action has more favorable results for the plaintiffs.  That is simply not a reasonable or appropriate manner for administering class actions.  *See King*, 2018 WL 2977393, at *7 ("The interest of justice weighs particularly heavy in a class action case, as it so significantly implicates the rights of persons who are not actually before the court").

## IV.    NO SPECIAL CONSIDERATIONS WEIGH AGAINST APPLICATION OF THE RULE HERE

Finally, in this Circuit the "First-to-File Rule is generally followed absent a showing of . . . special circumstances" such as "bad faith, anticipatory suits, and forum shopping."  *Gonzalez*, 2023 WL 3115585, at *3; *see also Farina*, 2023 WL 4241675, at *6.   No such special considerations apply here.  Ford seeks to transfer this action in good faith and in order to streamline proceedings, reduce costs for *all* parties, and avoid duplicative litigation that may result in inconsistent judgments.  Further, Ford is the defendant in each action and, therefore, could not have engaged in either anticipatory suits or forum shopping.   Accordingly, no special circumstances warrant deviation from the "first-to-file" rule.

## CONCLUSION

Based on the foregoing, Ford respectfully requests that its motion to transfer be granted and that the Court enter an order transferring this action to the District of Massachusetts.

Dated:  September 22, 2023

KASOWITZ BENSON TORRES LLP

Hector Torres*
Cindy Caranella Kelly*
Stephen P. Thomasch*
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
htorres@kasowitz.com
ckelly@kasowitz.com
sthomasch@kasowitz.com


*pro hac vice forthcoming

MCGUIREWOODS LLP

By: /s/ Perry W. Miles IV
Perry W. Miles IV (#43031)
Brian D Schmalzbach (#88544)
Jonathan T. Tan (#88037)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
pmiles@mcguirewoods.com
bschmalzbach@mcguirewoods.com
jtan@mcguirewoods.com

Attorneys for Defendant Ford Motor
Company

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2023, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to all counsel of record.

*/s/ Jonathan T. Tan*
Jonathan T. Tan