IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES DOLAN and JAMES MORRIS,
individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

Civil Action No. 3:23-cv-512

FORD MOTOR COMPANY,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on DEFENDANT FORD MOTOR COMPANY'S MOTION TO CONFIRM CONFIDENTIALITY DESIGNATIONS (ECF No. 603), PLAINTIFF'S RESPONSE TO FORD'S MEMORANDUM IN SUPPORT OF MOTION TO CONFIRM CONFIDENTIALITY DESIGNATIONS (ECF No. 612), and DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF MOTION TO CONFIRM CONFIDENTIALITY DESIGNATIONS (ECF No. 614). For the reasons set forth below, the MOTION will be granted with respect to the document with Item No. 1, provisionally granted to Item Nos. 31-33 and 120-121, and denied with respect to the remaining documents.

## FACTUAL BACKGROUND

This dispute arises from extensive ongoing litigation surrounding Ford's 10R80 transmission. Throughout this litigation, there have been many disputes over discovery, confidentiality, and

sealing stemming from the Stipulated Protective Order entered on December 14, 2023 (ECF No. 51).

The Court entered that Order to facilitate discovery. It, inter alia, allows the parties to designate documents as confidential. ECF No. 51.[1] If a designated document, or part of its text, is to be cited in, or presented as an exhibit to, a court filing, the filing party must ask the designating party to remove the confidential designation. Id. ¶ 10. If that is not received, the filing party must file under seal the pleading in which the document (or part of its text) is mentioned or to which it is attached. Id. To do that, the filing party must first file a motion for permission to seal the pleading. Id.; Loc. Civ. R. 5. If the motion is granted, a redacted version of the pleading is filed in the public record, and the unredacted version is filed under seal and made available only to the Court. Loc. Civ. R. 5.

Ford has produced approximately 150,000 documents in discovery. ECF No. 612, at 13. It has designated ninety-nine percent (99%) — roughly 149,000 — of these documents as confidential or highly confidential. Id. Ford has agreed to declassify very few of the documents that it has designated as confidential. The result is that virtually every substantive motion in this case has been filed under seal. Moreover, many of

[1] There are different degrees of confidentiality, but those differences are not at issue here.

the public versions are heavily redacted, especially those that tell about (1) the problems Ford has faced with the design and operation of the 10R80 transmission, (2) how (and why) difficulties faced by consumers in its use have resisted solution, (3) the nature and extent of Ford's knowledge of the defects in the transmission before it was put on the market (and thereafter), and (4) what Ford has told consumers and its dealers about what was wrong with the transmission and what to do about it.

In addition, the parties and the Court have oft been required to expend significant time and effort to address questions of confidentiality and sealing. When tested, as was done here, most confidentiality designations have been found wanting.

However, it is generally easier for the parties (particularly the Plaintiffs) to file under seal than to challenge document classifications. It is usually the Plaintiffs who want to cite to or rely on documents that Ford as designated as confidential. And, most often, it is less difficult – and involves less legal expense – for the Plaintiffs not to challenge the confidential designation and instead to seek permission to file under seal. Further, most often, the Plaintiffs assert that, under the Protective Order, it is Ford's burden to establish confidentiality. Thus, Ford argues for confidentiality and the Plaintiffs choose not to contest the point. As a result, the pleadings and documents that are sought to

be filed under seal are given that status, just on the say-so of the parties.

And, if the propriety of the confidential designation is not raised by the parties, the Court, obligated to follow the party presentation principle, does not — and, indeed, may not — address it. See Clark v. Sweeney, 607 U.S. 7, 8 (2025). Moreover, it is more efficient to allow the sealing and redacting process than it is for the Court sua sponte to call for briefing on the redesignation issue.

The sealing process created by the protection order operates consistently with the fundamental principle of public access to court records when the parties exercise restraint and care in designating documents as confidential, and when inappropriate designation is zealously challenged. However, when restraint and care have not marked the designation process (or when zealous opposition to erroneous overdesignation does not occur), the goals of facilitating discovery and efficiency in litigation are turned on their head, and the Court spends time dealing with the consequences of overdesignation. Worse still, the litigation is left to proceed under a veil of secrecy. Unfortunately, that has happened here.

That issue — removing the record from seal — will be addressed in another Memorandum Opinion. But the root problem, i.e., overdesignation, will be addressed here.

In this instance, Ford seeks to confirm the confidentiality of 142 of these documents. Five of those documents (Item Nos. 1, 29, 33, 35, and 37) have been sealed by the Court in prior orders (ECF Nos. 116, 120, 187, and 452) so Ford argues that they should remain confidential. Several documents (Item Nos. 31, 32, 33, 120, and 121) are subject to a confidentiality agreement between Ford and GM.

The documents generally are alleged to "reveal highly proprietary thought processes and problem-solving processes of Ford's engineers." ECF No. 604-5, at 9. Most of them are several years, if not more than a decade, old. The remainder are of indeterminate age and vary widely in their precise content.[2]

**LEGAL STANDARD**

The party seeking confirmation of confidentiality designations must demonstrate (1) confidentiality within the scope of Rule 26(c), and (2) "identifiable harm" absent confidential treatment of the documents. NewMarket Corp. v. Innospec, Inc., No. 3:10-cv-503, 2011 WL 2144695, at *4 (E.D. Va. May 25, 2011)

[2] Ford also challenges the timeliness of the Plaintiffs' motion, arguing that the Plaintiffs waited unreasonably long - as much as two years - to seek declassifcation. See ECF No. 604, at 27-28. Reasonableness is a factual determination to be made in light of the underlying circumstances. See Pa. Threshermen & Farmers' Mut. Cas. Ins. Co. v. Thornton, 244 F.2d 823, 825 (4th Cir. 1957). The Court finds that, considering the voluminous quantity of documents involved, the proportion marked confidential by Ford, the numerous other discovery disputes in this case, and the complexity of the facts, the Plaintiffs have acted within a reasonable time.

(quoting Minter v. Wells Fargo Bank, N.A., Nos. 7-cv-3442, 8-cv-1642, 2010 WL 5418910, at *8 (D. Md. Dec. 23, 2010)).[3]

In the context of Rule 26(c), confidentiality is a threshold requirement. The term "confidentiality" means information that has been kept nonpublic – i.e., that which is "proprietary" or otherwise "kept secret" and "not readily ascertainable." NewMarket, 2011 WL 2144695, at *4.

To prove an identifiable harm, the party seeking to maintain confidentiality must make "particular and specific demonstration[s] of fact" that disclosure would cause a significant competitive injury. Id. (quoting Great Am. Ins. Co. v. Gross, No. 05-cv-159, 2007 WL 1577503, at *12 (E.D. Va. May 30, 2007)). By contrast, "stereotyped and conclusory statements" are insufficient. Id. The potential for market harm decreases as the documents age: "Speculative allegations of injury from the disclosure of years-old information are not sufficient to warrant issuance of a protective order." Minter, 2010 WL 5418910, at *12 (quoting Deford v. Schmid Prods. Co., 120 F.R.D. 648, 654 (D. Md. 1987)); see also United States v. Int'l Bus. Machs. Corp., 67

---

[3] The Plaintiffs have cited to several cases involving motions to seal, which invoke a different standard based on stronger First Amendment implications. Unlike documents filed with the court, discovery is not presumptively entitled to public access. Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir. 1988). Thus, the test as outlined in Newmarket applies to this dispute.

F.R.D. 40, 49 (S.D.N.Y. 1975) (finding documents between three and fifteen years old were competitively stale and thus needed not remain confidential).

A "self-serving affidavit" cannot serve to justify designations with general, nonparticularized allegations of harm. In re Valsartan N-Nitrosodimethylamine (NDMA), 512 F. Supp. 3d 546, 553-54 (D.N.J. 2021) (finding naked assertions that de-designation would cause harm through "giving competitors insight as to how Torrent investigates . . . , manages investigations . . . , [and] communicates" insufficient). Instead, the party seeking to preserve designation must show concrete examples of business injuries that would arise from disclosure. See Waterkeeper All., Inc. v. Alan & Kristin Hudson Farm, 278 F.R.D. 136, 143 (D. Md. 2011) (holding that poaching of employees was not a sufficient harm because the defendant did not "specify what negative impact that poaching may have on its business" beyond allegations of "very serious injury").

## ANALYSIS

### I. Confidentiality

According to Ford, the 142 documents at issue in this MOTION are confidential because they are:

> [N]on-public Ford communications and information concerning Ford Motor Company, the vehicles at issue in this case, and the design and development of the 10R80 transmission, as well as its testing, root cause analysis, investigation, warranty analysis, cost and

> financial information, supplier information, and many other categories of information requested in discovery by Plaintiffs, which were created and maintained for business use by Ford . . . .

ECF No. 604, at 13. Plaintiffs appear not to dispute that the documents are nonpublic, primarily challenging the harm to Ford if they were to be released. See generally ECF No. 612. Therefore, for the first part of the analysis, the documents will be considered "confidential" within the meaning of Federal Rule of Civil Procedure 26(c). However, the confidentiality question necessitates consideration as well. It will be addressed in Section III, infra.

**II. Identifiable Harm**

Except for a small minority of the documents, Ford has not established that their disclosure would cause identifiable harm. Most of the documents are too old, and much of the remainder have not been shown to be damaging to Ford's business if they were disclosed. Although some documents remain confidential – namely, those subject to external confidentiality agreements or displaying a risk of particularized future harm – the majority will be declassified.

In support of its claim that disclosure of the documents would cause harm, Ford offers the Declaration of Kevin Payne, an Engineer in the Design Analysis Engineering Department at Ford. ECF No. 604-5, ¶ 2. Payne states that he has reviewed the documents at

issue and that they reflect "research, development, and analysis" which were created "at great expense to Ford." Id. ¶ 15. Payne explains that the 142 documents would allow competitors to "develop similar methodologies and solutions" that Ford has spent significant money and time creating. Id. ¶ 16. Attached to Payne's declaration is a table that sets forth the document, Plaintiffs' reason for challenging the designation, and Ford's explanation for the designation. Much of the language in the explanation for Ford's designation is repetitive, including use of the phrase "reveals highly proprietary thought processes and problem solving processes of Ford's engineers." ECF No. 604-5, at 9-44. Out of 142 documents in the attachment, 140 include that phrase.[4]

Perhaps unsurprisingly, this exact justification has previously been found to be insufficient by this Court. In another confidentiality dispute in this case,[5] Ford relied on the Declaration of Erich Kemnitz (ECF No. 158-1) in an attempt to show that certain numbers should remain classified. See ECF No. 631. Kemnitz wrote that the documents at issue in that dispute "reveal

---

[4] The exceptions are Item Nos. 3 and 121. Item No. 3 instead reads: "This document is confidential and a trade secret to Ford because it reveals Ford's highly proprietary warranty policies developed by Ford over time and at great expense." ECF No. 604-5, at 9. Item No. 121 does not have a variation of the phrase and will remain provisionally classified as discussed below. Id. at 38.

[5] For more detailed facts regarding this dispute, see ECF No. 678.

the highly proprietary thought processes and problem-solving processes of Ford's engineers" — the same wording supposedly written by Payne. ECF No. 158-1, at 5. In the Court's ORDER of September 14, 2026, Kemnitz's assertions, given their conclusory nature, were found "legally insufficient" to merit sealing the documents there at issue. ECF No. 678. As explained further below, that finding remains the case for Payne's words, particularly as it relates to older documents.

**1. Documents more than five years old are too stale to be competitively relevant.**

As Plaintiffs point out, most of the documents sought to be protected are old.[6] 122 of the 142 documents are more than 5 years old, and 70 are more than 10 years old.[7] ECF No. 604-5, at 9–44. Ford does not articulate how those documents could cause any competitive harm. Instead, it says that "many of Ford's

[6] Plaintiffs say 74 are more than 10 years old but agree that, for a few of the documents, they cannot definitively say a date and use context clues to determine their age. ECF No. 612, at 9 n.6. Those documents are addressed separately.

[7] The documents 5 years old or older not discussed separately below (excluding undated documents, for a total of 122), as identified by their Item Number in ECF No. 604-5 are: 4-26, 28–30, 35-58, 60-63, 65, 67-87, 89-92, 94-119, 122-135, and 137-138. The Court also notes here that Item Nos. 29, 35, and 37 have previously been sealed in this case. See ECF No. 452. However, in light of their advanced age — each created more than a decade ago — the Court finds that Ford has not shown that the concerns justifying filing under seal at that stage any longer apply. See ECF No. 612-1, at 3–4.

methodologies for developing, testing, and evaluating the performance of the first generation 10R80 transmission are still used today." ECF No. 614, at 13. So, it seems, Ford argues that competitors could determine some of the methodologies that Ford may or may not currently utilize. That is too speculative to meet Ford's burden. See Minter, 2010 WL 5418910, at *12 (declassifying 17-year-old documents which the defendant claimed could reveal internal "business structure and strategies" as too speculative a harm).

Ford's primary case in support of maintaining confidentiality, Dow Corning Corp. v. Jie Xiao, 283 F.R.D. 353 (E.D. Mich. 2012), is not persuasive here. Dow Corning involved a discovery dispute regarding the defendants' request to produce, quite simply, "[a]ll documents concerning any trade secrets of Plaintiffs regarding [the technology in question]." Id. at 356-57. That technology was a design for a "fluid bed reactor[]" of which, the plaintiff alleged, the defendants had misappropriated an earlier model. Id. at 356. The court found that this information was not necessary for the defendants' claim that the older design was of no value because it was still in use at the plaintiff's facility and, thus, still may have commercial utility. Id. at 360-61.

To Ford this means that, to declassify these documents, the Court must find that the older-model 10R80 transmission has no

value. See ECF No. 614, at 14. But that overstates the case's holding, because Dow Corning considered the discoverability of newer, explicitly-marked trade secrets, and the court found merely that a certain older technology — designs of which were in fact discoverable — may still have value independent of its future iterations. See Dow Corning, 283 F.R.D. at 360-61. That decision does not hold that old processes must remain confidential, notwithstanding the lack of particularized "specific prejudice or harm." Lathon v. Wal-Mart Stores E., LP, No. 09-cv-57, 2009 WL 1810006, at *5 (E.D. Va. June 24, 2009) (quoting Sullivan v. Dollar Tree Stores, Inc., No. 07-cv-5020, 2008 WL 706698, at *1 (E.D. Wash. Mar. 14, 2008)). Dow Corning still requires Ford to show some definite harm that may occur should the documents be declassified — a burden that has not been met.

Those documents set forth in footnote 7 are thus declassified, and Ford's MOTION will be denied with respect to them.

**2. Ford's conclusory statements of harm do not justify keeping most of the documents confidential, regardless of age.**

Most of the remaining documents would not cause an identifiable harm if they were disclosed, their relative novelty or indeterminate age notwithstanding.[8] The documents listed in

[8] The remaining documents justified on the ground that they "reveal[] highly proprietary thought processes and problem solving processes of Ford's engineers" are Item Nos. 2, 27, 34, 59, 64, 66, 88, 93, 136, and 139-42. See ECF No. 604-5, at 9-44.

footnote 8 will be declassified because Ford has failed to meet its evidentiary burden with respect to them.[9]

By way of Payne's declaration, Ford alleges that most of the confidential documents reveal the "thought processes" of its engineers. ECF No. 604-5, at 6. Revealing these "thought processes" is, it seems, supposedly of help to Ford's competitors in "develop[ing] similar methodologies and solutions" or "improv[ing] their own design processes." Id. at 6-7.

However, Ford does not show that it relies on any analyses or methodologies that are not common to the automotive engineering field. There is no information about a special methodology or tool that automotive engineers at other manufacturers do not use. Indeed, many of the documents include commonly-used forms of analysis. For instance, Item No. 66 (FORD_O'CONNOR_000032815) contains a "Six Sigma analysis" of various types of data. ECF No. 604-5, at 22. Six Sigma is a form of "strategic management approach" that is widely used to "significantly reduce defects and improve processes." See Adam Hayes, What Is Six Sigma? Concept, Steps, Examples, and Certification, Investopedia (Mar. 23, 2026), www.investopedia.com/terms/s/six-sigma.asp [perma.cc/646N-9QTV]. Dissemination of publicly-available strategies — particularly ones

[9] The same reasoning also applies to each of the documents declassified due to age because Ford justified them on the same ground. See ECF No. 604-5, at 9-44.

that Ford itself adopted from another company, see id. — certainly could not cause any identifiable harm to Ford.

The Court previously has told Ford that this kind of generic justification is inadequate to protect the confidentiality of 5-year-old or 10-year-old documents. As explained in the ORDER of September 14, 2026, the same wording employed by Payne was insufficient when written by the hand of Kemnitz. See ECF No. 678. Moreover, courts regularly reject similarly-framed allegations of identifiable harm. See Waterkeeper All., Inc., 278 F.R.D. at 143 (declassifying documents where the alleged harm came from the potential for competitors to implement the defendant's "procedures and processes"); Int'l Bus. Machs. Corp., 67 F.R.D. at 48-49 (declining to classify documents the defendant alleged could allow competitors to develop similar business strategies).

Nor does the decision in In re Valsartan help Ford. There, the defendant argued that dedesignation of documents would reveal to its competitors how it investigated defects in its drug. See 512 F. Supp. 3d at 553. The court found that the defendant did not prove that it used some "proprietary procedure or practice," that it responded differently than any other company in its position would have, or that there was some commercial advantage the defendant would lose if those facts were true and the method were revealed. Id. at 554-55. Here, Ford fails on the same three counts. The mere "stereotyped and conclusory statements" of Payne is not

proof that: (1) Ford has some proprietary problem-solving procedure; (2) if they did have one, that it was somehow meaningfully distinct from what another company would do; or (3) if it became public, it would revolutionize the rest of the industry's practices in a way that damaged Ford. NewMarket, 2011 WL 2144695, at *4.

Ford's MOTION therefore will be denied with respect to the documents listed in footnote 8, and those documents are no longer confidential.[10]

**3. Documents that do not include the threadbare assertions discussed above merit particular inspection.**

A few documents warrant additional attention. First, Item No. 1 (FORD_DOLAN_000147542) refers to a presentation that discusses "potential future design and development changes to be made to 10R transmissions to be equipped in 2027 and later model year vehicles." ECF No. 604-5, 9. That item has clear ongoing commercial value because it reflects information about future strategy. And,

[10] Plaintiffs also have argued that several of the documents ought to be declassified because they were partially disclosed in their Second Amended Complaint. See ECF No. 612-1. However, the previous use of a line or two from a document does not inherently justify terminating its confidentiality. See Amgen Inc. v. Sanofi, No. 14-cv-1317, 2019 WL 4305332 (D. Del. Sep. 11, 2019) (declining to declassify documents in their entirety when only portions were introduced at trial). However, the documents are declassified for the reasons described above.

it has been sealed by the Court on several occasions. ECF Nos. 115, 120, 187. Ford's MOTION will be granted as to that document.

Item No. 3 (FORD_DOLAN_000284391) refers to a Warranty & Policy Manual from June 2019. ECF No. 604-5, 9; ECF No. 612-1, 1. That document is asserted to be confidential because it contains "business strategy and detailed information concerning Ford's warranty coverages, as well as conditions and requirements for repair claims to be eligible for reimbursement." Id. Clearly, the terms of the warranty would not be confidential because they are provided to customers. Nor has Ford shown why conditions and requirements for receiving repairs ought to be confidential either. Indeed, customers would presumably be entitled to be informed about such information. See Merricks v. Monaco Coach Corp., No. 08-cv-47, 2008 WL 5210856 (W.D. Va. Dec. 15, 2008) (noting that the Magnuson-Moss Warranty Act "requires written warranties to 'fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty'" (quoting 15 U.S.C. § 2302(a)). On this record, the Court cannot find that Ford has met its burden to show good cause to confirm the confidentiality of the warranty. The MOTION will be denied as to that document.

Item Nos. 31, 32, 33, 120, and 121 are subject to a confidentiality agreement with General Motors. ECF No. 604-5, 15, 38. The particular terms of that nondisclosure or confidentiality

agreement are not provided and are not clear. However, the existence of a nondisclosure agreement with a third party might be sufficient cause to justify confirming their confidentiality. The MOTION is provisionally granted as to those documents. However, Ford shall supply the nondisclosure/confidentiality agreement to counsel for the Plaintiffs, who may then file a challenge to the confidentiality of those documents.

**III. Confidentiality Designations**

The Court takes this opportunity to note that the Stipulated Protective Order (ECF No. 51) requires the parties to make designations in good faith. See ECF No. 51, at 1-2. It has been held that designation of public documents, designation of substantially all disclosed documents, and admissions that numerous documents were wrongfully designated each "demonstrate[] the blatant absence of good faith review." Minter, 2010 WL 5418910, at *4; see supra discussion of Item No. 3 (ordering declassification of Ford's warranty, a document that is presumably available to owners); ECF No. 612, at 13 (noting 99% of the 150,000 documents produced were marked confidential); ECF No. 604, at 11 (withdrawing designation of 22 of the 159 documents challenged by plaintiff).

The Court further notes that, under the law of this Circuit, "court proceedings are presumptively open to public scrutiny." Co. Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014). Although

this case is currently at the discovery stage, and, as explained above, the public interest is somewhat lessened, Ford's overdesignation is producing a record that is largely sealed as to important parts of the case and the important issues that are presented therein.

Mindful of that consequence, the Court reminds both parties – but especially Ford – that "[t]he right of public access [to judicial documents and records] springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." Co. Doe, 749 F.3d at 265 (citing Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004)). And, a fundamental reason for that fundamental precept is that "public access promotes not only the public's interest in monitoring the functioning of the courts, but also the integrity of the judiciary." Id. at 266 (citing Columbus-Am. Discovery Grp. V. Atl. Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000)). It is also necessary to recall that the judiciary "claim[s] [its] legitimacy . . . by reason." Id. (quoting Hickling Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006)). And, "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." Id.

That rationale, of course, was posited in context of access to that which is in the court records. One of the steps in adding

to this record is the Stipulated Protective Order, whose terms allow documents produced in discovery to be designated as confidential, and which permits the subsequent sealing of these documents and pleadings describing them. Where, as here, overuse of the privilege of confidential designation extended by the Protective Order produces a record that offends the tradition of presumptive openness of court records, the Court is obligated to act.

There are two possible courses of action. One is to vacate or amend the Protective Order because its confidential designation privilege has been abused by classifying 99% of documents produced in discovery. The other is to require Ford to reassess its prolific use of what was intended to be a limited privilege.

As to the first option, this case is but one of three class actions involving the 10R80 transmission.[11] Ford has produced in this case some documents that it has produced in the other cases. From those overlapping productions, it appears that there too Ford has overused the confidential designation privilege. However, there is here an insufficient record to find that is in fact the case. And, in any event, it would be appropriate for the Court to receive further briefing before pursuing this course.

---

[11] See Dolan v. Ford Motor Co., No. 23-cv-512 (E.D. Va.); McCabe v. Ford Motor Co., No. 23-cv-10829 (D. Mass.); O'Connor v. Ford Motor Co., No. 19-cv-5045 (N.D. Ill.).

As to the second course, the record here shows that, in this case, Ford has overused the privilege of confidential designation permitted by the Protective Order. No further briefing is required before the Court can direct corrective action in the form of reassessment as a remedy for the consequences of the abuse of the privilege manifest by designating 99% of produced documents as "confidential" or "highly confidential."

Therefore, Ford is directed to re-examine, in perspective of this Memorandum Opinion and the presumption of open access, all confidentiality designations that it has made to date, starting with those designations pertaining to all documents cited in, or used as exhibits to, all pleadings (on all issues) filed in the record of this Court. And, to ensure that a fresh eye and an open mind informs the process, the re-examination of the designations must be made by lawyers not responsible for making the original designation.

To be sure that the review is effective, any lawyers in the re-examination must be informed of all of the issues in the case as shown by the pleadings filed to date. And, considering that the previous overdesignation evidences a lack of judgment and experience, no document may be designated as confidential unless:

1. There is attached to it a written explanation of why it was designated as confidential; and

2. An experienced partner who is actually and actively involved in this case and who will participate in

> the trial (a) has reviewed and approved the designation and (b) has signed the written explanation required by ¶ 1.

That task is to be accomplished expeditiously. On November 5, 2026, Ford shall file a schedule for completing the re-examination of all documents marked "confidential" or "highly confidential," starting with the documents to be given priority as described above. The Court expects that the schedule will be an expedited one and that redesignations should be made on a rolling basis so as to be completed by January 15, 2027.

**CONCLUSION**

For the foregoing reasons, the Court finds that Ford has met its burden with respect to Item No. 1 and, provisionally, to Item Nos. 31-33 and 120-121. Those documents will remain confidential. However, Ford has not met its burden to demonstrate harm that would attend to the release of the remaining documents, and it is thus ORDERED that they are declassified. The MOTION (ECF No. 603) will be granted in part and denied in part.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 7, 2026