**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

JAMES DOLAN and JAMES MORRIS,
individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

Civil Action No. 3:23-cv-512

FORD MOTOR COMPANY,

Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on BRIDGETT THOMPSON'S MOTION TO INTERVENE (ECF No. 656) ("MOTION TO INTERVENE") and the memoranda in support (ECF Nos. 657 & 666) and opposition (ECF No. 661). Bridget Thompson is the named plaintiff in Thompson v. Ford Motor Co., AAA Case No. 01-25-003-0579, an arbitration relating to the same 10R80 transmission at issue in this case. She seeks to intervene for the purpose of modifying the Stipulated Protective Order (ECF No. 51) ("SPO") so that she can use, as evidence in the arbitration, the expert report prepared by Dr. Jürgen Greiner, his testimony, and documents produced in this case that support the testimony (the "Greiner Materials"). Also, Thompson seeks modification of the SPO to allow her access to all documents produced herein so that she can use them in the arbitration.[1]

[1] Thompson also joins the PLAINTIFFS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER (ECF No. 650) for the same relief and has adopted the arguments presented therein. ECF No. 656, at 7.

Thompson is a plaintiff in McCabe v. Ford Motor Co., one of three class actions[2] against Ford involving the allegedly-defective 10R80 transmission. The issues in all three cases are much the same. In McCabe, Thompson, upon Ford's motion, was required to arbitrate her claims. ECF No. 661, at 9. They are thus now pending in an arbitration. Id.

In that arbitration, Thompson has designated Dr. Jürgen Greiner as an expert witness. ECF No. 657, at 3. Dr. Greiner also is an expert witness in this case. He has tendered in this case a report, supported by documents – many produced herein by Ford under the terms of the SPO entered in this case. Dr. Greiner's report, with minor redactions, has been placed in the public record in this case. See ECF No. 583-2. Nonetheless, Thompson apprehends that use of the Greiner Materials in the arbitration might be alleged to put both her and Dr. Greiner astride the SPO in this case. ECF No. 657, at 3. She has good reason for that apprehension: Ford claimed as much in the Thompson Arbitration and has raised the issue here as well. ECF No. 661, at 9-10. So, to protect against Ford's assertions and to assure that she can use the Greiner Materials in the arbitration (which was compelled at Ford's

[2] See Dolan v. Ford Motor Co., No. 23-cv-512 (E.D. Va.); McCabe v. Ford Motor Co., No. 23-cv-10829 (D. Mass.); O'Connor v. Ford Motor Co., No. 19-cv-5045 (N.D. Ill.).

urging), Thompson seeks to intervene in this action for the purpose of securing a modification to the SPO. ECF No. 657, at 1-2.

Also before the Court is PLAINTIFFS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER (ECF No. 650) ("PLAINTIFFS' MOTION TO MODIFY") and accompanying memoranda in support (ECF Nos. 651 & 665) and opposition (ECF No. 662). That motion requests the Court to permit Dr. Greiner to testify and rely on documents produced in this case in all other pending or future disputes regarding the same subject matter. Plaintiffs also seek to share documents produced here with plaintiffs in other such cases for the sake of efficiency. By the ORDER of June 2, 2026 (ECF No. 667), the Court granted the same relief with respect to Dr. Greiner's testimony in other related litigation.

For the reasons set forth below, the MOTION TO INTERVENE (ECF No. 657) will be granted, and the MOTION TO MODIFY (ECF No. 650) will be denied without prejudice.

## LEGAL FRAMEWORK

### A. Intervention

Federal Rule of Civil Procedure 24(b) permits district courts to allow intervention by one who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Intervention is the typical procedural mechanism for a nonparty to seek modification of a protective order. United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424,

1427 (10th Cir. 1990) ("The courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose."); In re Grand Jury Subpoena (Under Seal), 836 F.2d 1468, 1470 (4th Cir. 1988) (acknowledging permissive intervention is a permissible way to apply for modification of a protective order). The motion must be (1) timely, (2) involve similar facts, and (3) not unduly prejudice or delay the original parties. Fed. R. Civ. P. 24(b)(1), (2); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 780 (3d Cir. 1994).

**B. Modifying a Protective Order**

The Court may modify a protective order for "good cause." Fed. R. Civ. P. 26(c); In re Kolon Indus., Inc., 479 F. App'x 483, 485-86 (4th Cir. 2012). Factors to consider in this analysis include "the reason and purpose for a modification, whether a party has alternative means available to acquire the information, the type of protective order which is at issue, and the type of materials or documents which are sought." SmithKline Beecham Corp. v. Synthon Pharms., Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002). The "most forceful" ground on which to modify the protective order is "for access to use material as evidence in other litigation." 8A Richard L. Marcus, Federal Practice and Procedure § 2044.1 (3d ed. 2026).

## ANALYSIS

### I. Thompson's Intervention Seeking Modification of the SPO

Intervention is appropriate here so that Thompson can seek modification of the SPO. Her arbitration relates to the same transmission that is at issue in this case, and she alleges the same defects as do the Plaintiffs here. Therefore, Thompson's arbitration shares common questions of law or fact. The intervention is also timely. It was filed roughly one month after the arbitrator expressed the view that the protective order in McCabe – in relevant part identical to the SPO in this case – might prohibit use of the Greiner Materials. ECF No. 657, at 6-7. Finally, intervention would not delay or prejudice the parties in this case: Thompson does not seek to litigate a claim in Dolan. Nor does her intervention in any way delay these proceedings.

Contrary to its protestations, Ford has shown no prejudice that can be attributed to allowing Thompson to intervene. Instead, as is its wont, Ford has interposed a litany of perceived impediments that are fanciful and do not pertain to whether intervention is appropriate. None have merit.

First, Ford argues that the arbitrator "[h]as [a]lready [d]enied the [d]iscovery [r]equested [b]y [t]his [m]otion." ECF No. 661, at 9-10. That is just not right.

What the arbitrator denied (as Ford cites at ECF No. 661, at 14) was a discovery request that sought all of the materials

produced in the three class actions involving the 10R80 transmission. But, contrary to Ford's contentions, the arbitrator did not foreclose seeking relief under the protective orders applicable to the documents in question. ECF No. 651-5, at 3-4. Nor could he have done so. That is a power that rests with this Court, not with the arbitrator.

Second, Ford takes the view that Thompson has not shown good cause to modify the SPO. ECF No. 661, at 11-15. That, of course, erroneously conflates the procedural issue of intervention with the substantive question of whether the possible modification is warranted. That argument puts the cart before the horse, at least how Ford presents it.

Moreover, insofar as Ford raises good cause, it in fact buttresses Thompson's request to intervene. Ford's good cause argument illustrates how unevenly Ford is using both the arbitration process and the limited privilege of confidentiality designation permitted by the protective orders in this and other cases. Its use of that limited privilege serves to foreclose access to testimony and documents that, at least in this case, present substantial evidence probative of Ford's liability and that are highly pertinent to the kinds of damage award that its conduct might support.

Finally, Ford spills much ink arguing that granting the MOTION TO INTERVENE would trench on a protective order issued in McCabe.

See ECF No. 661, at 12-17. But that argument is both hard to understand and nonsensical — and it overestimates both the Court's power and the effect of the SPO. A modification to the SPO in this case would not, as Ford so dramatically writes, be a "collateral attack" on any order issued in McCabe. Nor would it "vitiate the standing orders of another Article III judge." Id. at 15-16. In fact, and at law, an order modifying the SPO in this case has no immediate effect beyond doing just that: modifying the SPO in this case. It in no way modifies or overrules, or should be construed to modify or overrule, any decisions or orders in McCabe v. Ford Motor Co., Thompson v. Ford Motor Co., or O'Connor v. Ford Motor Co. Nor does permitting intervention or modifying the SPO in this case to allow use of these materials in the arbitration constitute a decision that those materials are admissible in the arbitration. Instead, the modification simply clarifies that the SPO is not the potential barrier to use that the arbitrator may perceive it to be or that Ford appears to want it to be. In any event, Ford does not explain how permitting Thompson to intervene could have any effect on the proceedings in other courts.

Ford produced documents in this case under the SPO, an umbrella protective order. It then abused the provisions of the SPO to designate 99% of those documents as "confidential" or "highly confidential." See ECF No. 684, at 2. When those designations have been tested, they have largely been found to

lack merit. Id. at 10-17. And, Ford has invoked the SPO (as well as similar protective orders) in an effort to keep Thompson from even intervening to secure permission to use the Greiner Materials in the arbitration which Ford initiated. No provision of the SPO actually deprives Thompson – or anyone else, for that matter – of the right to intervene to ask the Court to modify it. See ECF No. 51. Nor does any provision of any order issued by any court or any arbitrator.

In sum, Ford's contention that Thompson cannot intervene to seek modification of the SPO lacks in merit, and it finds no support in the jurisprudence of Rule 24. Moreover, the interposing of the opposition is an unfair tactic that runs counter to every precept that arbitration is supposed to advance.

The MOTION TO INTERVENE to seek modification of the SPO meets every requirement for intervention and thus will be granted. Next, the substance of the request.

**II. The Requested Modification to Allow Use of the Greiner Materials**

The Court finds that there is good cause to modify the SPO with respect to the use of the Greiner Materials in the Thompson Arbitration for the same reasons that warranted analogous relief in the ORDER of June 2, 2026 (ECF No. 667). The SPO has already been modified to permit use of the Greiner Materials in pending litigations over the 10R80 transmission. Allowing their use in

pending arbitrations would help promote full, fair, and efficient consideration of the issues there.

Ford also has offered no valid reasons why Dr. Greiner should not be allowed to use the knowledge he has acquired here to help her present her case in arbitration. Moreover, to deny her that right would just increase the cost to her of the arbitration that Ford forced upon her. Ford has shown no legitimate basis for the Court to enable such a result. And, to the extent that Ford argues that the modification is improper because it interferes with orders of other courts or arbitrators, those arguments are rejected for the reasons discussed in Part I, *supra*.

Thus, the MOTION TO INTERVENE (ECF No. 656) will be granted with respect to allowing Dr. Greiner's testimony and report, as well as the documents upon which he relied, to be used in the Thompson Arbitration. The SPO will be modified to that end.

**III. The Requested Modification to Permit Use of the Dolan Production**

The Court finds there is also good cause to allow sharing of the documents produced here with Thompson for her use in the arbitration. Use of documents in parallel proceedings is the "most forceful" reason to modify a protective order. Marcus, *supra*. Over 150,000 documents, totaling more than 1.2 million pages, have been produced in this case. ECF No. 651, at 3.

Production of those documents was sought because they were thought to be relevant to the same issues that this case and the Thompson Arbitration have in common. And, they were produced here either because Ford did not contest their relevance to those issues or any objection to relevance was overruled. Ford has shown no reason to believe that they are not also relevant to the Thompson Arbitration, a proceeding involving the same 10R80 transmission and the same issues as in this case.

There also appears to be no feasible alternative for Thompson to gain access to these documents because the arbitrator has relied on the terms of a protective order identical to the SPO in this case to restrict discovery. ECF No. 651-5, at 3-4. Modifying the SPO likely would help promote efficiency and fairness by lifting one barrier to disclosure in the Thompson arbitration.[3]

The type of protective order at issue also weighs toward permitting disclosure. This case uses what is commonly referred to as an "umbrella order," meaning that Ford did not have to make particularized showings of confidentiality when making the confidentiality designations. ECF No. 651, at 7; ECF No. 666, at 19 (adopting that argument). That, and the fact that Ford designated as confidential 99% of documents produced in this case,

[3] Whether Thompson must also seek relief from the McCabe order to satisfy the arbitrator's concerns as to the documents he thought were covered by the protective order in that case is not an issue to be decided here.

see ECF No. 684, at 2, teaches that the SPO is too broad. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1133 (9th Cir. 2003) (finding the use of an umbrella order favored modification). Indeed, the Court held as much when resolving Ford's MOTION TO CONFIRM CONFIDENTIALITY DESIGNATIONS (ECF No. 603) in the MEMORANDUM OPINION entered on October 8, 2026 (ECF No. 684). The Court is confident that Ford can avoid suffering competitive harm so long as the Thompson Arbitration employs adequate confidentiality provisions equivalent to those in this case or adopts terms by stipulation by the parties. Foltz, 331 F.3d at 1133.

The type of documents at issue in the case also favors modifying the protective order. Most of the documents are several years old, some are already public, and Ford has failed to provide adequate justifications for confidentiality of such documents when called upon to do so. See ECF No. 684, at 21 (ordering that 136 of 142 challenged documents be declassified). Additionally, in light of the Court's directive in its ORDER of October 8, 2026 (ECF No. 685), many of the documents produced in this case may ultimately be declassified.

Finally, as this case demonstrates, Ford has so overused the limited confidentiality privilege contemplated in the SPO that significant aspects of the litigation are under seal, a concept fundamentally at odds with the principle that litigation is to be

conducted openly. See ECF No. 684, at 3-4, 17-19; see also Co. Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014) ("[C]ourt proceedings are presumptively open to public scrutiny."). Enabling Thompson to use the Dolan production in her arbitration is thus consonant with the public interest in "monitoring the functioning of the courts" and "the integrity of the judiciary." Co. Doe., 749 F.3d at 266 (citing Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000)); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (permitting consideration of "the public interest[] in access" when analyzing the common law right to view court records).

Therefore, the MOTION TO INTERVENE (ECF No. 656) will also be granted to the extent that it seeks access by Thompson's counsel and witnesses to all documents produced in this case, subject to the provisions of the SPO respecting confidentiality.[4] And again, as discussed in Part I, supra, this MEMORANDUM OPINION should not be read to contravene the terms of any order in McCabe or the Thompson Arbitration.

**IV. The PLAINTIFFS' MOTION TO MODIFY**

The PLAINTIFFS' MOTION TO MODIFY (ECF No. 650) presents quite different questions. It asks that the SPO be modified in three

---

[4] Where the confidentiality designations have been found wanting in this case, they likewise are wanting in the Thompson Arbitration.

ways: (1) To allow all documents produced by Ford in this case to be available for use in all "parallel proceedings, including pending and future arbitrations administered by the American Arbitration Association;" (2) To permit "Plaintiffs' counsel [in this case] to share materials produced in this action with counsel for plaintiffs in O'Connor v. Ford Motor Co., No. 1:19-cv-05045 (N.D. Ill.), and McCabe v. Ford Motor Co., No. 1:23-cv-10829 (D. Mass.);" and (3) To "confirm[] that materials filed publicly on the docket in this action are not subject to the use restrictions in paragraphs 4 and 5" of the SPO. ECF No. 650, at 1.

**A. Publicly Filed Documents**

Taking the last issue first, it is axiomatic that nothing filed publicly on the docket in this case is subject to the SPO. So, the SPO need not be modified in any way to facilitate access to them. Nothing else need be said about this issue.

**B. The Other Requests to Modify**

A threshold issue forecloses the grant of the remaining requests presented by this motion. Plaintiffs' purported injury from being unable to share the documents — that they may be subject to contempt sanctions if they chose to do so despite the Protective Order, see ECF No. 665, at 4 — is quite speculative. See TransUnion LLC v. Ramirez, 594 U.S. 413, 437-38 (2021) (finding that the risk of future harm is not a concrete injury for standing purposes unless there has been some materialization of that harm). Thus,

whether to modify the SPO to allow use of all documents produced in this case in all similar pending disputes not already addressed above is not properly before the Court at this time.

Those best suited to present arguments with respect to the need for access in other cases are the lawyers representing the plaintiffs in those other cases, not the Plaintiffs here (who may lack full insight into the unique needs and questions presented therein). Thus, the Court will consider motions to modify the SPO raised by the plaintiffs in other disputes regarding the 10R80 transmission who wish to access these documents. Those motions may be filed using the same procedure as Ms. Thompson – i.e., intervention for the limited purpose of modification. This practice best promotes the tenets of fundamental fairness, efficiency, and judicial economy without unfairly contravening Ford's expectations in producing documents under the SPO. Accordingly, those aspects of the PLAINTIFFS' MOTION TO MODIFY (ECF No. 650) still pending will be denied without prejudice.

**CONCLUSION**

BRIDGETT THOMPSON'S MOTION TO INTERVENE (ECF No. 656) will therefore be granted. The Stipulated Protective Order (ECF No. 51) will be modified to permit Dr. Greiner, in the Thompson Arbitration, to use and testify to (1) his report and conclusions as prepared in this case, and (2) all documents reviewed and/or

considered by him in reaching those conclusions.[5] The SPO will further be modified to free from restraint all documents produced herein by Ford for use in the Thompson Arbitration, including those relied upon by Dr. Greiner in forming his opinion. For classified documents, this permission is conditioned on the parallel proceeding providing confidentiality protections equivalent to those in this Court by order or stipulation of the parties.[6]

The PLAINTIFFS' MOTION TO MODIFY STIPULATED PROTECTIVE ORDER (ECF No. 650) will also be denied without prejudice to the extent that it seeks modification of the SPO to allow Plaintiffs to share all documents produced in this action (aside from the material described above) with the plaintiffs in all other parallel proceedings. If the plaintiffs in such cases wish to gain access to the documents produced in this case, they must proceed in the accepted manner: by filing a motion to intervene – just as did Ms. Thompson.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 23, 2026

[5] Whether that testimony is admissible in that arbitration is a question for the arbitrator because this MEMORANDUM OPINION and its implementing ORDER simply remove that testimony and those documents from the confidentiality provisions of the SPO.

[6] The designation of a document changing as a result of the process described in the ORDER of October 8, 2026 (ECF No. 685) means, of course, that such a condition need no longer apply as to that document.